# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

WILMA R. NEGRÓN-VEGA,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CIVIL NO.: 17-1119 (MEL)

## OPINION AND ORDER

Pending before the court is Wilma R. Negrón-Vega's ("Plaintiff") appeal from the decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability benefits. Plaintiff—who applied for disability alleging back disorders, rheumatoid arthritis, and other inflammatory arthropathies—challenges the administrative law judge's decision with regard to step four of the sequential process.

## I. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff filed an application for Social Security benefits alleging that on December 31, 2010 ("the onset date"), she became unable to work due to disability. Tr. 315.[1] Plaintiff met the insured status requirements of the Social Security Act through December 31, 2016. Tr. 23. Prior to becoming unable to work, Plaintiff was a general clerk. Tr. 30. The claim was denied on April 10, 2013, and upon reconsideration. Tr. 56, 60. Thereafter, Plaintiff requested a hearing, which was held on April 14, 2015 before Administrative Law Judge Richard Ortiz Valero (hereafter "the ALJ"). Tr. 35. On May 29, 2015, the ALJ issued a written decision finding that Plaintiff was "not under a disability, as defined in the Social Security Act, at any time from December 31, 2010

---

[1] "Tr." refers to the transcript of the record of proceedings.

through the date of this decision." Tr. 30. Thereafter, Plaintiff requested review of the ALJ's decision. Tr. 14. Plaintiff's request for review was denied by the Appeals Council, rendering the ALJ's decision the final decision of the Commissioner of Social Security, subject to judicial review. Tr. 1–4. Plaintiff filed a complaint on January 26, 2017. ECF No. 1. Both parties have filed supporting memoranda. ECF Nos. 24, 27.

## II. LEGAL STANDARD

### A. Standard of Review

Once the Commissioner has rendered a final determination on an application for disability benefits, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's review is limited to determining whether the ALJ employed the proper legal standards and whether his factual findings were founded upon sufficient evidence. Specifically, the court "must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error." López-Vargas v. Comm'r of Soc. Sec., 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." Ginsburg

v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's findings of fact are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). Moreover, a determination of substantiality must be made based on the record as a whole. See Ortiz, 955 F.2d at 769 (citing Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." Id. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

**B. Disability under the Social Security Act**

To establish entitlement to disability benefits, a plaintiff bears the burden of proving that she is disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 146–47 (1987). An individual is deemed to be disabled under the Social Security Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to a five-step sequential process. 20 C.F.R. § 404.1520; Barnhart v. Thomas, 540 U.S. 20, 24–25 (2003); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Yuckert, 482 U.S. at 140–42. If it is determined that the plaintiff is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). At step one, it is determined whether the plaintiff is working and thus engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If she is, then disability benefits are denied. 20 C.F.R. § 404.1520(b). Step two requires the ALJ to determine whether the plaintiff has "a severe medically determinable physical or mental impairment" or severe combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If she does, then the ALJ determines at step three whether the plaintiff's impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If so, then the plaintiff is conclusively found to be disabled. 20 C.F.R. § 404.1520(d). If not, then the ALJ at step four assesses whether the plaintiff's impairment or impairments prevent her from doing the type of work she has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv). In assessing an individual's impairments, the ALJ considers all of the relevant evidence in the case record to determine the most the individual can do in a work setting despite the limitations imposed by her mental and physical impairments. 20 C.F.R. § 404.1545(a)(1). This finding is known as the individual's residual functional capacity ("RFC"). Id. If the ALJ concludes that the plaintiff's impairment or impairments do prevent her from performing her past relevant work, the analysis proceeds to step five. At this final step, the ALJ evaluates whether the plaintiff's RFC, combined with her age, education, and work experience, allows her to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the

ALJ determines that there is work in the national economy that the plaintiff can perform, then disability benefits are denied. 20 C.F.R. § 404.1520(g).

### III. THE ALJ'S DETERMINATION

In the case at hand, the ALJ found in step one of the sequential process that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, December 31, 2010. Tr. 23. At step two, the inquiry as to severe impairments resulted in the ALJ determining that Plaintiff had spine disorders, myalgia, myositis, inflammatory arthritis, arterial hypertension, hypothyroidism, bilateral tarsal tunnel syndrome, and polyneuropathy. Id. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Tr. 24. Next, the ALJ determined that Plaintiff had

> the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b). The claimant can lift carry 20 pounds occasionally and 10 pounds frequently; sit for 6 hours in an 8 hour day; stand and/or walk for 6 hours in an 8 hour day. She can frequently climb ramps, stairs, balance, stoop, kneel, crouch, and occasionally climb ropes, ladders, scaffolds, and crawl. She is also limited to frequently reaching overhead bilaterally and frequently handling and fingering bilaterally.

Id. At step four, the ALJ presented Plaintiff's RFC limitations to a vocational expert. The vocational expert testified that Plaintiff can perform past relevant work as a general clerk. Tr. 30. Because Plaintiff can perform past relevant work, the ALJ concluded that she is not disabled. Id.

### IV. ANALYSIS

Plaintiff challenges the ALJ's decision with regard to step four of the sequential process. First, Plaintiff argues that the ALJ erroneously discounted the opinion of Dr. Iván Martínez, a treating physician, when determining her RFC. Second, Plaintiff argues that the ALJ improperly interpreted "raw" medical evidence in making his RFC finding.

**1. Plaintiff's claim that the ALJ erroneously discounted the opinions of a treating physician.**

Plaintiff contends that the ALJ should have given more weight to the opinion of a treating physician, Dr. Martínez, when determining Plaintiff's RFC. In his opinion, the ALJ stated that he

> g[a]ve little weight to the treating source's RFC, Dr. Martínez, because it is not explained nor supported by his progress notes at exhibits 13F, 14F, and 16F. Furthermore, Dr. Martínez has only treated the claimant sporadically since October 2013. Moreover, he reported that these limitations existed since October 31, 2010, which is before he even started treating the claimant, and, coincidentally, is the exact date the claimant is alleging disability.

Tr. 28 (citations omitted). The ALJ also stated that he "g[a]ve little weight to the treating source's opinion because it is inconsistent with the objective and other substantial medical evidence of record." Id. (citations omitted).

The disability determination process generally gives "more weight to medical opinions from [a claimant's] treating sources." 20 C.F.R. § 404.1527(c)(2). However, the ALJ is not *required* to give controlling weight to the opinions of treating physicians. Barrientos v. Sec'y of Health & Human Servs., 820 F.2d 1, 2–3 (1st Cir. 1987); Rivera-Tufino v. Comm'r of Soc. Sec., 731 F. Supp. 2d 210, 216 (D.P.R. 2010). Rather, the ALJ can give less weight to a treating physician's opinion if he has good reason to do so. Pagán-Figueroa v. Comm'r of Soc. Sec., 623 F. Supp. 2d 206, 210–211 (D.P.R. 2009) (citing Carrasco v. Comm'r of Soc. Sec., 528 F. Supp. 2d 17, 25 (D.P.R. 2007)). Specifically, the ALJ may disregard the treating physician's opinion when it is "not supported by medically acceptable clinical laboratory techniques, or [is] otherwise unsupported by the evidence." Sánchez v. Comm'r of Soc. Sec., 270 F. Supp. 2d 218, 221–22 (D.P.R. 2003) (citing Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir. 1994)). This remains true regardless of whether the source of the evidence is a non-treating doctor. Keating v. Sec'y of

Health & Human Servs., 848 F.2d 271, 275 n.1 (1st Cir. 1988) (citing Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 130 (1st Cir. 1981)).

An examination of the record reveals that Dr. Martínez's opinion is inconsistent with his own progress notes and other evidence.

First, on March 13, 2013, Dr. Michael Babilonia, a treating physician, did not find range of motion limitations in Plaintiff's neck and cervical spine, shoulders, elbows, wrists, hands and fingers, ankles, feet and toes, knees, or hips. His examination of Plaintiff's neck did not reveal palpable nodes or thyroid enlargement. There was no evidence of arterial or venous obstruction in Plaintiff's extremities. During the musculoskeletal examination, Dr. Babilonia did not find signs of muscle atrophy, loss of sensation in the extremities, or radiation of pain to the lower extremities. Plaintiff's reflexes were normal. Plaintiff did not limp and did not use a walking assistive device. Dr. Babilonia found restricted range of motion of the lumbar spine but normal range of motion in the rest of Plaintiff's joints. Plaintiff's motor strength was "excellent." In an electrocardiogram, Plaintiff had a regular rhythm and there were no signs of arrhythmia. Dr. Babilonia did not find any sensory deficits. Tr. 26.

Further, Dr. Babilonia completed a Description of Hand Function report in which he indicated that Plaintiff did not have hand limitations. She had a 5/5 hand strength and negative Tinnel and Phalen tests. He also completed a Gait Description form in which he indicated that Plaintiff had normal gait, 5/5 strength in the lower extremities, and no need for a walking assistive device. Tr. 27.

Second, according to Dr. Martínez's progress notes, on July 17, 2014, Plaintiff had negative straight leg raising, normal sensory functioning, normal strength, negative Patrick's test, and negative Tinnel on both ankles. Id.

7

Third, Plaintiff's visit to Dr. Noemi Varela, a treating physician, in February 2015 revealed that Plaintiff did not have swelling, muscle pain, dystrophy disease, abnormal gait, or resting tremors. Indeed, she had good muscle tone and strength. Id.

In sum, substantial evidence supports the ALJ's decision to discount the opinion of Dr. Martínez.

**2. Plaintiff's claim that the ALJ improperly interpreted "raw" medical evidence.**

Plaintiff contends that the ALJ should not have relied on the RFC assessments by state agency medical consultants because they were submitted before some of the medical examinations in the record were conducted. Because the ALJ discounted the only other RFC assessment, that of Dr. Martínez, Plaintiff argues that the ALJ relied on "raw" medical evidence instead of on physicians' opinions translating that evidence into functional terms. See 20 C.F.R. § 404.1527(a)(2) (defining medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite your impairment(s), and your physical or mental restrictions").

In Gordils v. Sec'y of Health & Human Servs., 921 F.2d 327, 330 (1st Cir. 1990), the First Circuit held that the fact that a consulting physician, who neither examined the plaintiff nor testified at the hearing, did not have a complete medical record before him when he formed his RFC assessment would be one factor counseling against assigning controlling weight to that opinion. However, due to the findings of a consulting neurologist, who examined the plaintiff and found no evidence of a disability over four months after the consulting physician submitted his report, substantial evidence supported the ALJ's decision. Id. The First Circuit emphasized that the ALJ is not qualified to assess RFC based on bare medical findings but stated that this principle

8

does not mean that the ALJ "is precluded from rendering common-sense judgments about functional capacity based on medical findings, as long as the [ALJ] does not overstep the bounds of a lay person's competence and render a medical judgment." Id. at 329.

In the case at bar, the RFC assessments were submitted by the state agency medical consultants on April 2, 2013 and October 24, 2013. However, on July 17, 2014, Plaintiff visited Dr. Martínez, a treating physician. Plaintiff had negative straight leg raising, normal sensory functioning, normal strength, negative Patrick's test, and negative Tinnel on both ankles. Then, in February 2015, Plaintiff visited Dr. Varela, another treating physician. Plaintiff did not have swelling, muscle pain, dystrophy disease, abnormal gait, or resting tremors, but had good muscle tone and strength.

The ALJ was justified in taking the examinations of the treating physicians into account. In so doing, he did not overstep the bounds of a lay person's competence. He merely concluded that the examinations did not establish that there had been a change in Plaintiff's condition after the RFC assessments were submitted. Indeed, Plaintiff has not explained how any examinations conducted after the RFC assessments establish that there was a change in Plaintiff's condition, which invites the court to speculate to that effect. Thus, the examinations of the treating physicians and the RFC assessments constitute substantial evidence.

**V.    CONCLUSION**

Based on the foregoing analysis, the court concludes that the decision of the Commissioner was based on substantial evidence. Therefore, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 25th day of June, 2019.

s/Marcos E. López  
U.S. Magistrate Judge